1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11  GLENN S. MARTINEZ CASTRO,              )   Case No.: 1:14-cv-01326-AWI-BAM (PC)
                                           )
12                   Plaintiff,            )   FINDINGS AND RECOMMENDATIONS
                                           )   REGARDING DEFENDANTS' MOTION FOR
13          v.                             )   SUMMARY JUDGMENT FOR FAILURE TO
                                           )   EXHAUST ADMINISTRATIVE REMEDIES
14  UNNAMED DEFENDANTS, et al.,            )   (ECF No. 51)
                                           )
15                   Defendants.           )
                                           )   ORDER REGARDING PLAINTIFF'S MOTION TO
16                                         )   STAY
                                           )   (ECF No. 55)
17                                         )
                                           )
18                                         )   **FOURTEEN (14) DAY DEADLINE**
                                           )
19  ———————————————————————————           )

20  **I.      Introduction**

21          Plaintiff Glenn S. Martinez Castro ("Plaintiff") is proceeding pro se and in forma pauperis in

22  this civil rights action pursuant to 42 U.S.C. §1983. This action proceeds on Plaintiff's Second

23  Amended Complaint against Defendant Correctional Officer Elias for excessive force in violation of

24  the Eighth Amendment. This claim arises out of an alleged disturbance on January 25, 2013 in a

25  holding tank at Wasco State Prison. (ECF No. 31.)

26          On May 5, 2016, Defendant Elias filed a motion for summary judgment pursuant to Federal

27  Rule of Civil Procedure 56, arguing Plaintiff has failed to exhaust his administrative remedies. Fed. R.

28  Civ. P. 56(c); Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), cert. denied, 135 S. Ct.

                                             1

403 (2014). (ECF No. 51.) On October 5, 2016, Plaintiff filed an opposition, (ECF No. 57), and on October 12, 2016, Defendant filed a reply to the opposition, (ECF No. 59.)[1] Defendants' motion is deemed submitted. Local Rule 230(l).

## II.   Legal Standards

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

### B.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d 1162, 1166 (9th Cir. 2014); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

---

[1] Defendant notes that Plaintiff's opposition was untimely pursuant to Local Rule 230(l). However, on May 23, 2016, Plaintiff filed a notice of change of address and motion to stay, stating that he was being transferred and would not have access to his legal materials and resources, and that he was dealing with a family law litigation matter. (ECF No. 55.) Plaintiff does not state exactly what relief he seeks, but it appears he seeks a stay to allow him to respond to this pending motion for summary judgment. Defense counsel also informs the Court that Plaintiff was housed in an Orange County jail pending his family law matters through at least mid-April and possibly longer. Defense counsel further informs the Court that Plaintiff was re-served with the motion for summary judgment at that jail in September 2016. (ECF No. 56-2.)  Based on this information, the Court finds that Plaintiff has shown good cause for his late filing of his opposition, and that the interests of justice are best served by considering his opposition in ruling on Defendant's motion.

The failure to exhaust is an affirmative defense, and Defendant bears the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007); Albino, 747 F.3d at 1166. Defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the Defendant carries this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.   Discussion

#### A.   Summary of CDCR's Administrative Review Process

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1. The process is initiated by submitting a CDCR Form 602 describing the issue and the relief requested. Id. at § 3084.2(a). Three levels of review are involved—a first level review, a second level review and a third level review.  Id. at § 3084.7. Bypassing a level of review may result in rejection of the appeal. Id. at § 3084.6(b)(15). Under § 1997e, a prisoner has exhausted his administrative remedies when he receives a decision at the third level. See Barry v. Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).

#### B.   Summary of Plaintiff's Allegations

Plaintiff's lawsuit concerns alleged events when he was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Wasco State Prison. Plaintiff alleges, in relevant part, as follows:

On January 25, 2013, Plaintiff and five other general population (GP) inmates were sent to Receiving and Release to await bus transfer to Calipatria State Prison. The inmates were placed in a "regular" holding tank. At some point, Correctional Officer Ward, a non-party, came to the cell door and told the inmates that they were being disruptive and loud, and that if they continued to be loud, he would place them in the cell by the metal detector. (Second Am. Compl., ECF No. 31, p. 3.)

Plaintiff "confronted" Officer Ward, asking him if the tank he referred to was a protective custody tank. Officer Ward informed the inmates that they were being moved to the tank he referred to. Plaintiff asked Officer Ward "if that was a protective custody tank and why we were being placed in the obvious (s.n.y.) labeled cell?" (Second Am. Compl., ECF No. 31, p. 3.) Officer Ward told Plaintiff that he and the other inmates were going to be placed in the other tank because they were being too loud.

Plaintiff alleges that "all general population inmates were placed inside the (sny) holding tank by Officer Ward, with protective custody inmates already inside which resulted in a group disturbance between (general population) and (protective custody) inmates." (Id.)

Defendant Elias, along with ten other correctional officers, responded to the disturbance. Defendant Elias instructed all of the inmates to "get down." Plaintiff, along with all of the other inmates, lay face down in a "eagle-spread" position. Plaintiff alleges that at that point, the following occurred:

> Correctional Officers then opened the holding cell door; over (10) officers entered with hand held metal batons fully extended, screaming at all inmates running in the holding tank Defendant Elias stating, "this isn't B-yard, bitches," (B yard is a special needs yard), while immediately physically assaulting plaintiff and all other (GP) inmates with their metal batons, multiple times over plaintiff's head, torso, legs, and continuously on the (left knee) plaintiff's left knee is still badly damaged. Various correctional officers also assaulted plaintiff repeated times. After the two to three minute assault from Defendant M. Elias, and the other officers, plaintiff and all other (GP) inmates were then handcuffed picked up, pushed and thrown against cell bars while and the ground while being escorted to another area. . .

(Second Am. Compl., at pp. 3-4.) (errors in original).

The inmates were taken to one-man holding cages, and put in the holding cages, two men to a cage. Plaintiff alleges that he was "violently" shoved into the cage by Defendant Elias. Defendant Elias and other officers began questioning the inmates while they were in the holding cages. Plaintiff alleges that Defendant Elias and the other officers left the area and returned.

Upon his return, Defendant Elias apologized, stating that "we had no idea you all were (GP) inmates, we want to apologize to all of you." Defendant Elias repeatedly apologized to the inmates and directed officers to move the inmates to the holding cages they were originally in. Defendant Elias and

4

another officer, Garlo, "began to explain to us the mistake of placing us in a (SNY) labeled holding tank was not intentional." (Second Am. Compl., at p. 4.) They also informed the inmates that they would not receive a disciplinary charge. At that point, the buses that were to transport the inmates to Calipatria State Prison arrived. Plaintiff alleges that both Officer Garlo and Defendant Elias "tried rushing Plaintiff and all other inmates to putting on our jumpsuits and to get on the bus and leave as soon as possible." (Id.)

Registered Nurse ("RN") Johnson and RN Abella were both on duty at receiving and release at the time. Officer Garlo continued to direct the inmates to hurry on to the bus. Plaintiff spoke to Officer Garlo and Defendant Elias, "bringing to their attention we have not received medical attention or have been checked by the RNs on duty." (Second Am. Compl. at p. 4-5.) After "over an hour," Officer Garlo agreed to let Plaintiff and the other inmates be seen by RNs Johnson and Abella. Plaintiff was escorted to the RN's office. Plaintiff explained to RN Johnson "what had occurred and how Plaintiff received injuries and what started the incident." (Id. at 5.) RN Johnson began to record Plaintiff's injuries on a medical report. RNs Johnson and Abella "then checked and care for Plaintiff's knee injuries." (Id.) Plaintiff alleges that he and the other inmates were returned to the holding tank after receiving medical attention.

Plaintiff alleges that Officer Garlo directed Defendant Elias to provide the inmates with television sets as a bribe for not informing officials at Calipatria what happened. Officer Garlo specifically stated to the inmates, "Don't bring this up to the C/Os over at Calipatria or we have ways to make your lives miserable." (Second Am. Compl. at p. 5.) Plaintiff and the other inmates then boarded the bus to Calipatria.

### C.   Defendants' Statement of Undisputed Facts[2]

1.  Plaintiff was transferred from Wasco State Prison to Calipatria State Prison on January 25, 2013. (Decl. of N. Telles, ECF No. 51-4, at ¶ 3, Ex. A.)

///

---

[2]     Defendant's Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment For Failure to Exhaust Administrative Remedies. (ECF No. 51-3.)

2.   On June 4, 2013, Calipatria State Prison's Inmate Appeal Office received a group administrative appeal from Plaintiff, dated May 28, 2013, alleging that unnamed officers used excessive force against him at Wasco State Prison on January 25, 2013. (Decl. of P. Nava, ECF No. 51-6, at ¶ 5, Ex. A.)

3.   Plaintiff's administrative appeal dated May 28, 2013, was the first administrative appeal Calipatria State Prison's Inmate Appeal Office received from Plaintiff regarding an incident at Wasco on January 25, 2013. (Decl. of P. Nava ¶ 5.)

4.   On June 4, 2013, Calipatria State Prison's Inmate Appeal Office responded to Plaintiff's administrative appeal dated May 28, 2013, and informed Plaintiff that his appeal was forwarded to Wasco State Prison for review. (Decl. of P. Nava, ¶ 5, Ex. A.)

5.   Wasco State Prison's Inmate Appeal Office received Plaintiff's appeal dated May 28, 2013, on June 12, 2013. (Decl. of F. Feliciano, ECF No. 51-7, at ¶ 5, Ex. A.)

6.   Plaintiff's administrative appeal dated May 28, 2013, was the first administrative appeal Wasco State Prison's Inmate Appeal Office received from Plaintiff regarding an incident at Wasco on January 25, 2013. (Decl. of F. Feliciano, ¶ 5.)

7.   On June 12, 2013, Wasco State Prison's Inmate Appeal Office sent Plaintiff a response notifying him that his administrative appeal, dated May 28, 2013, was cancelled because it was untimely. (Decl. of F. Feliciano, ¶ 5, Ex. A.)

8.   Wasco State Prison's Inmate Appeal Office's June 12, 2013 response notified Plaintiff that his administrative appeal, dated May 28, 2013, lacked supporting facts or evidence. (Decl. of F. Feliciano, ¶ 5, Ex. A.)

9.   Wasco State Prison's Inmate Appeal Office's June 12, 2013 response notified Plaintiff that complaints against staff are not subject to group appeals. (Decl. of F. Feliciano, ¶ 5, Ex. A.)

10.   Wasco State Prison conducted a confidential inquiry into Plaintiff's allegations of excessive force on January 25, 2013, and concluded that they were unsubstantiated. (Decl. of F. Feliciano, ¶ 6.)

11.   Plaintiff was not provided with information about the outcome of Wasco State Prison's inquiry into his allegations of excessive force on January 25, 2013. (Decl. of F. Feliciano, ¶ 6.)

12.  On May 2, 2014, Wasco State Prison's Inmate Appeal Office cancelled and returned an administrative appeal to Plaintiff because it was duplicative. (Decl. of F. Feliciano, ¶ 5, Ex. B.)

13. On May 6, 2014, Wasco State Prison's Inmate Appeal Office cancelled and returned an administrative appeal to Plaintiff because it was duplicative. (Decl. of F. Feliciano, ¶ 5, Ex. C.)

14. On May 23, 2014, Wasco State Prison's Inmate Appeal Office cancelled and returned an administrative appeal to Plaintiff because it was duplicative. (Decl. of F. Feliciano, ¶ 5, Ex. D.)

15.  On June 9, 2014, Wasco State Prison's Inmate Appeal Office cancelled and returned an administrative appeal to Plaintiff because it was duplicative. (Decl. of F. Feliciano, ¶ 5, Ex. E.)

16.  On July 22, 2014, Calipatria State Prison's Inmate Appeal Office received an administrative appeal from Plaintiff regarding his January 25, 2013 allegations, and notified Plaintiff that the appeal was forwarded to Wasco for processing. (Decl. of P. Nava, ¶ 5, Ex. B.)

17.  On July 29, 2014, Wasco State Prison's Inmate Appeal Office cancelled and returned an administrative appeal to Plaintiff because it was duplicative. (Decl. of F. Feliciano, ¶ 5, Ex. F.)

18.  None of Plaintiff's administrative appeals related to his January 25, 2013 allegations were submitted to the third and final level of review in CDCR's administrative appeal process. (Decl. of M. Voong, ECF No. 51-5, at ¶¶ 1-7, Exs. A-C.)

### D.    Plaintiff's Relevant Disputed Facts[3]

On May 28, 2013, Plaintiff sent and submitted his first 602 appeal, "Staff Complaint, Misuse of Force." Plaintiff's appeal was cancelled due to time limits constraints and making general allegations lacking supporting facts or evidence. This appeal was cancelled at the second level. Plaintiff's first appeal Log No. WSP-O-1302214.

Plaintiff's response to the first cancelled appeal 602 was also cancelled. Log No. WSP-O-14-01748. Appeals coordinators at Wasco, T. Schultz and F. Feliciano, continued to cancel, stating the appeal complaint Plaintiff submitted on May 2, 2014 was a duplicate.

///

///

---

[3]     Plaintiff's Statement of Disputed Facts. (ECF No. 57, pp. 24-25) (errors in original).

On May 23, 2016, Log No. WSP-O-14-01748 was again cancelled and rejected. Plaintiff's appeal was reviewed by the higher authority claimed by T. Schultz and F. Feliciano, and his request to have the incident of his complaint investigated was not heard and was dismissed.

On May 24, 2016, Plaintiff, via correspondence mail, wrote to the Office of Internal Affairs in Sacramento, California, of the injustice the California Department of Corrections have subjected Plaintiff to, and the Appeal Office infringing his right to exhaust to find a remedy to his complaint. Plaintiff attempted to continue to exhaust all levels of the appeals process, but the appeals office of CDCR would not forward his appeal further than the second level, and continued to cancel and reject every attempt of Plaintiff's appeal to reach the Director's level Chief Appeal Coordinator of CDC in Sacramento.

Due to the Appeal Office's infringing of Plaintiff's attempt to make it to the third and final level of review in the CDCR administrative appeal process, Plaintiff was not able to have the Staff Complaint Misuse of Force investigated or properly heard due to second level reviewers T. Schultz and F. Feliciano continuous cancelling and rejection of Plaintiff's appeal.

### E.    Parties' Arguments

Defendant argues that the undisputed evidence shows that Plaintiff failed to submit a timely administrative appeal regarding his allegations in this case, and therefore failed to exhaust available administrative remedies concerning his claim. Specifically, Defendant asserts that it is undisputed that Plaintiff did not submit an administrative appeal regarding the excessive force alleged in this lawsuit until over four months after the alleged conduct occurred, and that this administrative appeal was properly cancelled as untimely under Section 3084.8(b) of the California Code of Regulations. Defendants further argue that Plaintiff's attempts to submit additional appeals does not save his lawsuit, as those appeals were properly screened out as duplicative under Section 3084.8(b) of the California Code of Regulations. As none of Plaintiff's appeals proceeded to the third level of review, Defendants argue that Plaintiff failed to exhaust his available administrative remedies here. Finally, although the prison subsequently investigated Plaintiff's allegations, Defendant nevertheless asserts that his appeal was properly rejected as defective and therefore his remedies remain unexhausted.

///

8

In opposition to Defendant's motion, Plaintiff argues that in this case  it is disputed whether he made a timely appeal, because he alleged in his second amended complaint that on January 25, 2013, he was told not to say anything to the officers at Calipatria State Prison or they would "make his life miserable." Thus, for fear of retaliation, he did not feel safe using the appeals process, and also he had very limited knowledge that his rights were violated by Defendant Elias.  Plaintiff also cites case law discussing that prisoners are only required to exhaust available administrative remedies, and that remedies are not available if prison officials prevent proper exhaustion.

In reply, Defendant argues that Plaintiff has not shown that administrative remedies were unavailable to him, based on his purported lack of knowledge of his rights, or his allegations that he feared retaliation for making complaints. Defendant argues that lack of knowledge is not recognized as a basis for showing unavailability of administrative remedies under the law, and that Plaintiff's statements about retaliation are both unsupported and contradicted by Plaintiff's own admissions. Further, Defendant argues that Plaintiff's alleged retaliatory statements would not deter a reasonable person of ordinary firmness from submitting a timely grievance under the circumstances. Thus, Defendant argues there is no material dispute here that Plaintiff failed to exhaust his available administrative remedies.

### F.    Analysis

Defendant has met his initial burden of establishing that Plaintiff failed to exhaust the available administrative remedies in this case. The exhaustion requirement under the PLRA demands "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 90-91 (2016). To "properly exhaust" administrative remedies, the prisoner must generally comply with the prison's procedural rules throughout the administrative process. Jones, 549 U.S. at 218. Under the relevant prison regulations, an inmate appeal may be screened out and rejected or cancelled at any level if it failed to comply with Title 15's requirements. See Cal. Code Regs. tit. 15, §§ 3084.6(b)-(c). For example, CDCR's regulations require the inmate to describe the specific issue under appeal, submit one issue per appeal, list all staff members involved, and state all facts available to the inmate when the appeal was submitted. See Cal.Code Regs. tit. 15, §§ 3084.2(a) (1)-(4). Also, the inmate must submit the appeal on a CDCR Form 602 within 30 days after the alleged incident. See Cal.Code Regs. tit. 15, § 3084.8(b).

Here, Plaintiff admits that his first 602 appeal regarding the allegations in this case, Log Number WSP-O-1302214, was submitted more than 30 days after the January 25, 2013 events at issue. Plaintiff also admits that this inmate appeal was cancelled as untimely, and also as lacking in supporting facts and evidence. Further, he admits that his subsequent appeals were later cancelled as duplicative, and that none of his appeals proceeded to the third level of review. Thus, Defendant has shown that Plaintiff did not comply with the requirements for submitting an inmate appeal regarding the January 25, 2013 incident he complaints about.

As discussed above, once Defendant makes a showing of remedies which have not been exhausted, the burden shifts to Plaintiff to rebut by showing that the administrative remedies were unavailable within the meaning of the PLRA. See Albino, 697 F.3d at 1032–33. In this case, Plaintiff argues that he did not feel safe using the appeals process due to threats of retaliation.

A grievance process may be rendered unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1860 (2016). In McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015), the Ninth Circuit held that a threat of retaliatory action by a prison official would render a prison grievance system unavailable so as to excuse a prisoner's failure to exhaust administrative remedies if the following conditions are met:

> 1. The threat of retaliation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and
>
> 2. The threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Id. at 987.

In this case, Plaintiff relies on the fact that while he was at Wasco, Officer Garlo stated to him and the other inmates, "Don't bring this up to the C/Os over at Calipatria or we have ways to make your lives miserable." (Second Am. Compl. at p. 3.) Plaintiff asserts in his opposition that, based on this statement, he did not feel safe using the appeal process. However, Plaintiff further contends in his second amended complaint that shortly after Officer Garlo made this comment, Plaintiff was transferred to Calipatria. The agreed evidence also shows that, notwithstanding Plaintiff's alleged fear

of retaliation, he began the process of filing several inmate appeals concerning the January 25, 2013 events within a few months of his arrival at Calipatria. Plaintiff provides no evidence of any change in circumstances or any intervening events which would explain why he was initially deterred from submitting an appeal due to Officer Garlo's threat, but then was no longer deterred by the same threat a few months later. In short, Plaintiff has presented insufficient evidence to support a reasonable inference that he failed to timely exhaust his available administrative remedies because he actually believed he would be retaliated against for doing so.

Plaintiff has also not presented sufficient evidence demonstrating that a reasonable inmate of ordinary firmness would be deterred from pursuing his administrative remedies under the circumstances here. There is nothing in the record to show that an inmate could reasonably perceive that the prison officials Calipatria would, or could, collude with those at Wasco to take any adverse action against an inmate in retaliation for making complaints about the alleged January 25, 2013 events. Thus, there is nothing in the record to support a finding in this case that a reasonable inmate would have been deterred from submitting an appeal due to the threats made at Wasco after he was transferred to a new institution. Accordingly, Plaintiff has failed to demonstrate that administrative remedies were rendered effectively unavailable due to the threats of prison officials at Wasco.

Next, the Court turns to Plaintiff's argument that he was prevented from pursuing his administrative remedies because of his limited knowledge. Ignorance alone of the available administrative remedies for addressing a violation of one's rights does not excuse the failure to exhaust those remedies. See e.g, Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir.1999) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing."); Cooper v. Bell, 628 F.2d 1208, 1212 n. 6 (9th Cir. 1980) ("mere ignorance of one's legal rights does not justify extension of a filing period"), overruled on other grounds as recognized in Valenzuela v. Kraft, Inc., 801 F.2d 1170, 1174 (9th Cir. 1986); Marrero Morales v. Bull Steamship Co., 279 F.2d 299, 301 (1st Cir. 1960) ("[M]any cases have held that ignorance of one's legal rights does not excuse a failure to institute suit."). "[F]or an inmate to claim that a prison's grievance procedure was effectively unavailable due to the inmate's unawareness of the procedure, the inmate must show that the procedure was not known and unknowable with reasonable effort." Albino v. Baca, 697 F.3d 1023,

11

1037 (9th Cir. 2012), on reh'g en banc, 747 F.3d 1162 (9th Cir. 2014).

Here, Plaintiff presents no argument or evidence that the grievance procedure was unknowable to him with reasonable effort. Instead, he relies upon his assertions that he lacked knowledge "of the Constitutional rights he is entitled to" and lacked an understanding that "his rights were violated by the Defendant Mr. Elias." (ECF No. 57, p. 24, 27.) Plaintiff's personal lack of knowledge of the law is insufficient to excuse Plaintiff's failure to exhaust his available remedies in this case.

Finally, although Plaintiff is not entirely clear, his contentions suggest an assertion that the administrative remedies here were effectively unavailable to him because his inmate appeals were wrongfully cancelled. The Ninth Circuit has recognized an exception to the exhaustion requirement when a prisoner's attempts to exhaust his administrative remedies are "thwarted by improper screening." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). To meet this exception, the prisoner must show:

> 1.  That he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and
>
> 2.  That prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

Id. at 823–24. Plaintiff has presented no evidence that his appeals were improperly screened in this case. Instead, the evidence submitted by Defendant shows that Plaintiff's appeals were properly screened, and determined to be either untimely or duplicative, and Plaintiff does not dispute that evidence.

## IV.   Conclusion, Order and Recommendation

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for a stay to allow him to respond to Defendant's motion for summary judgment, filed May 23, 2016 (ECF No. 55), is DENIED as moot.

Additionally, for the reasons described above, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment for the failure to exhaust administrative remedies, filed May 5, 2016 (ECF No. 51) be GRANTED.

///

1
2
3
4
5
6
7
8

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

9
10

IT IS SO ORDERED.

11
12

Dated:   __**March 23, 2017**__         ___/s/ *Barbara A. McAuliffe*___
                                        UNITED STATES MAGISTRATE JUDGE

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13